IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CIVIL CASE NO:

KAHAMA VII, LLC,

     Plaintiff,

  v.

ROSSWAY SWAN TIERNEY BARRY, PL.
a/k/a ROSSWAY MOORE SWAN P.L.
a/k/a ROSSWAY MOORE AND TAYLOR

     Defendant.

_____/

## COMPLAINT

Plaintiff files its Complaint as follows:

1.  Plaintiff is a limited liability company, whose sole member is Kahama Holdings LLC, a limited liability company, whose members are individuals domiciled in and residing in California and citizens of same for purposes of diversity jurisdiction.

2.  Defendant Rossway Swan Tierney Barry P.L. aliased above, is a limited liability company whose members are individuals domiciled and residing in Florida, who are citizens of same for purposes of diversity jurisdiction.

3.  Per 28 U.S.C. § 1332 (a), the Court has diversity jurisdiction over this action because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, per the aggregated value of all of Plaintiff's claims against the Defendant.

4.   Under 28 U.S.C. § 1367, the Court should exercise supplemental jurisdiction over relatively simple claims not meeting the requirements for federal jurisdiction, arising from the same nucleus of operative facts and same parties.

5.   Per Fla. Stat. Ann. § 48.193 *et seq* personal jurisdiction is proper as to the Defendant, which conducts business in Florida and owns real property in Florida.

6.   Under 28 U.S.C. § 1391 and § 89, venue is proper in the Court as a substantial part of the events or omissions giving rise to the claims occurred in this District and the real property that is the subject of this action is located in this District.

<u>**FACTS COMMON TO ALL ALLEGATIONS**</u>

7.   On or about 8/31/81, Cummins Enterprises, Inc., in which title was vested, conveyed its title to certain real property to Reflections on the River, Inc., [ROR] per a Warranty Deed recorded 9/4/81, Indian River O.R. Book 629, Page 2379.

8.   On or about 9/1/81, Lucinda Eddy, in whom title was vested, conveyed his title to the above Property to ROR, per a quitclaim deed recorded on 9/4/81, Book 629, Page 2382.

9.   On or about 12/17/81, Henry Fischer, in whom title to was vested, conveyed his title to the above Property to ROR, per a Warranty Deed recorded on 12/18/81, Book 635, Page 01114.

10.   On or about 9/4/81, ROR executed and delivered a promissory note for the principal sum of $2,000,000.00 in favor

of Graves Brothers Company, developer of the Property, recorded on 9/4/81 at Book 629, Page 2401, Instrument No. 226608, with the below Mortgage.

11.  The Property, including all current and after-acquired right, interest and title of ROR, was secured as collateral for the Note per a Mortgage recorded on 9/4/81, Book 629, Pages 2389-2400, Instrument No. 2266158.

12.  On 11/16/83, a Declaration of Covenants for Reflections on the River [Condominium] Association was recorded at O.R. Book 674, Page 1752, in which the Association agreed that the lien of Mortgage would be upon its apartment units, the appurtenances of the units, including but not limited to undivided shares in the common elements.

13.  The Declaration contains a Joinder and Consent of Graves to the Declaration, referencing the Mortgage, omitting the page numbers of the recorded Mortgage.

14.  The Association consists of nine (9) sub-associations, with 203 residential units and common elements, of which common elements and or certain units are still encumbered by the Mortgage, such as Condominiums 647-1752, Unit 306 and Condominiums 823-886, Unit 6234, 6256 and 6250.

15.  However, Article IV, Section I of the Declaration only mentions the existence of eight (8) condominium sub-associations, consisting of 240 units total.

16. On 11/9/83, Graves executed a Joinder and Consent of Contract, dated 11/9/83, recorded 11/22/83, Book 674, 2792, in which Graves again referenced and consented to the Declaration of Covenants, subject to their 1981 Mortgage, including the page numbers for the Mortgage in this document.

17. The Association had notice of the Note and Mortgage since 1981 and of the Joinders since 1983, clearly indicating that Association's right title and interest in the Property is subject to and inferior to the Mortgage.

18. The Note and Mortgage were modified, extended and amended per certain instruments dated 6/30/90, 9/4/92 and 8/1/94 respectively, referenced in the title of the Property.

19. On 6/25/04, Graves assigned the Note and Mortgage [the "Instruments"] to Reflections Finance Company, Inc., [RFC] per an assignment recorded on 7/6/04, Book No. 1754, Page 1984.

20. RFC and ROR are both owned by Thomas F. Scott, a current developer on the Property.

21. On 9/3/09, RFC and ROR executed a Modification, Reaffirmation and Extension Agreement of the Instruments, extending their maturity date to 9/4/19, recorded at Book 2439, Page 185.

22. On 9/23/10, RFC and ROR executed a First Amendment to the above Modification, affirming ROR still owed the

indebtedness due and owing under the Instruments, recorded at Book 2467, Page 586.

23.   On 10/19/10, RFC assigned the Instruments to Reflections Holding Group, LLC, [RHG] per an assignment recorded at Book 2467, Page 594.

24.   At the time of the above assignment, Plaintiff was and is RHG's sole member and an intended third party beneficiary of the Note and Mortgage, which were acquired to secure and protect Plaintiff's rights in the Property as to Lot 9, detailed below.

### THE SEBASTIAN FORECLOSURE AND PROPERTY

25.   On 5/18/06, Reflections of Sebastian executed and delivered a promissory note to Indian River Bank for the principal sum of $500,000.00, renewed on 5/18/07.

26.   On 5/18/06, Sebastian executed a Mortgage recorded on 5/19/06 at Book 2034, Page 1090, securing a different, otherwise unencumbered portion of the Property as collateral for the note, known as Lot 9 [the "Sebastian Property"] capable of accommodating 24 condominium units, but currently a vacant lot.

27.   Lot 9 was not addressed as a sub-condominium unit in the Declaration and has no recorded right of access.

28.   On 9/5/08, the Sebastian Note and Mortgage were assigned to Plaintiff by RBC Bank, the current holder.

29.   On 1/15/09, Plaintiff sued Sebastian for foreclosure in Indian River Circuit Court, Case No. 2009 0112-CA-09.

30.  On or about 2/15/09, Sebastian filed a counterclaim in the foreclosure to invalidate Plaintiff's Mortgage, alleging that Thomas F. Scott, also its managing member lacked legal authority to execute the Mortgage on behalf of Sebastian.

31.  On or about 2/23/09, Plaintiff filed a title insurance claim to resolve the title dispute with Sebastian.

32.  On 3/6/09, the title insurance company retained Defendant to represent Plaintiff in the Sebastian foreclosure, in which Defendant entered its appearance on behalf of Plaintiff and fully participated on behalf of Plaintiff.

33.  On or about 2/8/11, Sebastian served RHG with a subpoena *duces tecum*, seeking documents between RHG and Plaintiff regarding the Sebastian loan and RHG's acquisition of the Graves Note and Mortgage, set forth below.

34.  Plaintiff moved to quash Sebastian's subpoena on the grounds of trade secret and other applicable objections to disclosing its relationship with RHG, including RHG's acquisition of the Note and Mortgage

35.  Defendant knew of RHG's acquisition of the Note and Mortgage and its relationship with Plaintiff, having acquired this confidential knowledge from its conference with RHG's corporate representative on or about 3/10/11.

## THE REFLECTIONS QUIET TITLE LAWSUITS

36. On 2/3/09, the Association, represented by Defendant, filed suit against RFC in Indian River Circuit Court, Case No. 2009-0300-CA 03, regarding the Property, [the "First Quiet Title Case], allegedly seeking to quiet title in the Property by invalidating the Mortgage and also intending to suppress development of the Property.

37. On 10/19/10, RFC assigned the Note and Mortgage to RHG as detailed above.

38. Originally, in October 2010, RHG moved to intervene in the First Quiet Title Case to protect its interest in the Instruments, whose sole member was Plaintiff.

39. On 12/21/10, Defendant, on behalf of the Association, filed an amended complaint in the First Quiet Title Case, joining RHG as a defendant to invalidate the Mortgage.

40. Despite Plaintiff/RHG's demands, Defendant refused to withdraw from being Plaintiff's counsel in the Sebastian Foreclosure *or* as the Association's counsel in the First Quiet Title Case, even after being advised that Plaintiff owned RHG and was financing RHG's defense of the First Quiet Title Case.

41. Defendant insisted on representing Plaintiff in the Sebastian Foreclosure, gaining knowledge of RHG's relationship with Plaintiff and of RHG's acquisition of the Note and Mortgage

*and* simultaneously suing RHG on behalf of the Association in the First Quiet Title Case to invalidate the Note and Mortgage.

42. On 5/11/11, RHG moved to disqualify Defendant from representing the Association in the First Quiet Title Case, per Defendant's representation of Plaintiff in the Sebastian Foreclosure.

43. On 8/22/11, Defendant sought to avert its disqualification from the First Quiet Title Case by voluntarily dismissing RHG from that case one day before a hearing on RHG's motion to disqualify.

44. On 9/27/11, Plaintiff obtained title to Lot 9 per a certificate of title recorded at Book 2525, Page 1361 following completion of the Sebastian foreclosure by Defendant.

45. However, in the Sebastian Foreclosure, Defendant never addressed the issues with Lot 9 in the Declaration or Plaintiff's legal rights of access to Lot 9, which would have required naming the Association in that suit.

46. Plaintiff paid Defendant for fees and/or costs incurred in the Sebastian foreclosure.

47. The Association wished to suppress development of the various properties it governed, including Lot 9, still an empty lot and refused to provide confirmation of Plaintiff's right to use a gated driveway easement to access Lot 9, used by other owners or mortgagees on the Property.

48.   On 12/12/11, while the First Quiet Title Case was still pending, the Association, again represented by Defendant filed suit in Indian River Circuit Court, Case No. 2011-CA-3052, regarding the Property, [the "Second Quiet Title Case] to purportedly quiet title in the Property as to itself and other defendants, including Reflections Commercial, LLC, [RCL] which shares Scott as a common owner with RFC and ROR.

49.   On 4/3/13, the Association, represented by Defendant, filed an amended complaint in the Second Quiet Title Case, again joining RHG to that case in order to invalidate the Mortgage as to the Property.

50.   Despite Plaintiff/RHG's demands, Defendant refused to withdraw from or dismiss RHG from the Second Quiet Title Case, even after again being advised of Plaintiff's ownership of RHG and that Plaintiff was financing RHG's defense of the Second Quiet Title Case.

51.   On 5/28/13, RHG moved to disqualify Defendant from its representation of the Association in the Second Quiet Title Case, per Defendant's prior representation of Plaintiff in the Sebastian Foreclosure also involving the Property.

52.   On 11/12/13, the parties to the Second Quiet Title case engaged in mediation, entering into a Settlement Agreement effective 12/17/13.

53.  Defendant improperly represented the Association in the mediation, negotiation of and subsequent enforcement of the Agreement, at its office, now requiring cancellation of the Note and Mortgage before dismissal of RHG from the state case.

54.  Per the Agreement, RCL would attempt to purchase Lot 9 from RHG, actually owned by Plaintiff, of which Defendant was aware.

55.  Plaintiff signed a sales contract with Thomas F. Scott for the sale of Lot 9 for $300,000.00 by 1/31/14, of which Defendant was aware.

56.  On 12/3/13, Defendant obtained a default judgment in the First Quiet Title Case, which it covertly continued against RFC, purporting to cancel the Mortgage as to the Property.

57.  Defendant intended that the above default judgment would impede/damage enforcement of RHG's Mortgage, presenting the appearance of its cancellation from title to the Property.

58.  Per an amended default judgment entered in the First Quiet Title Case on 12/16/13, Defendant insisted on language in this judgment that the Mortgage was cancelled as to the Property, although not affecting "any mortgage" held by RHG.

59.  Defendant insisted that RHG approve this amended default judgment in the First Quiet Title Case and execute the Settlement of the Second Quiet Title Case.

60.  Per the Agreement, on 1/9/14, the Indian River Circuit Court stayed the Second Quiet Title Case for 90 days, after which it would be closed, absent further activity.

61.  On or about 1/28/14, Scott paid $30,000.00 to Plaintiff as the initial deposit under the sales agreement.

62.  On or about 2/12/14, Scott sought an extension of time for the outside closing date on Lot 9 until five (5) days after administrative approval for a revised site plan for a recreation area on a different part of the Property

63.  On 2/14/14, Plaintiff agreed to the above extension, with the understanding that approval would occur before expiration of the existing stay on 4/9/14.

64.  On 4/9/14, Defendant, on behalf of the Association, requested another sixty (60) day extension of the stay in the Second Quiet Title case to obtain the approvals.

65.  RHG opposed the above extension.

66.  Despite repeated requests by Plaintiff and RHG, Scott failed to provide any adequate assurance that he had financing or funds for the purchase of Lot 9, as further detailed below.

67.  Upon information and belief, Scott did not provide the assurances or obtain financing for the purchase of Lot 9 due to Defendant's delay in obtaining the approvals, as the Association wanted to continue, not resolve, the Second Quiet Title Case.

68. To the knowledge of Plaintiff and RHG, the approvals were not provided as of the date of this suit.

69. On 5/19/14, RHG assigned the Note and Mortgage and choses of action and claims under same to Plaintiff, which has standing to pursue RHG's claims in this case.

70. On 5/20/14, by motion of Defendant, the Indian River Circuit Court stayed the Second Quiet Title Case for an additional sixty (60) days, over the objection of RHG, to which Plaintiff also did not consent.

71. RHG filed a motion to sever the claims in the Second Quiet Title case as to itself, which the Defendant opposed on behalf of the Association.

72. On 5/23/14, RHG invalidated, voided and repudiated the Settlement Agreement, of which Defendant is aware.

73. On 5/23/14, Plaintiff invalidated, voided, repudiated the sales contract, which did not close by the deadline and did not obtain the $270,000.00 balance, of which Defendant is aware.

74. On 5/23/14, Plaintiff filed a separate action with the Court to foreclose the Note and Mortgage against the Association, ROR, RFC, RCL and Scott to invalidate the sales contract.

75. The Association, still represented by Defendant then filed another motion on 7/7/14 to stay the Second Quiet Title Case for another sixty [60] days.

76.   The Association continued to raise the Second Quiet Title Case, allegedly still prosecuted by Defendant, as a defense to Plaintiff's federal case and to compel RHG's compliance with the since-cancelled settlement.

77.   RHG then moved to dismiss the Second Quiet Title Case and also set a hearing for its motion to disqualify Defendant from representing the Association in that case.

78.   RHG scheduled a hearing on 9/8/14 on its motion to disqualify Defendant from the Second Quiet Title Case.

79.   On 9/4/14, to again avert its disqualification, Defendant withdrew from representing the Association in the Second Quiet Title Case via a stipulation with another firm, representing the Association in the federal case.

80.   Counsel for RHG and Plaintiff appeared at the 9/8/14 hearing to obtain a dismissal or stay of the Second Quiet Title Case and preclude/limit its use by the Association as a defense to Plaintiff's federal case.

81.   Although the Second Quiet Title case is stayed, RHG remains a party in that case.

82.   Upon information and belief, Defendant provided the Association with its attorney-client derived knowledge of RHG's structure and relationship with Plaintiff in order to assist the Association in prosecuting the Quiet Title Cases against RHG and defend Plaintiff's federal case.

83.  All conditions precedent to this action were waived or fulfilled.

84.  Defendant's wrongful actions in representing interests adverse to Plaintiff lasted continuously until at least 9/4/14.

## COUNT I: LEGAL MALPRACTICE AND RELATED RELIEF

85.  ¶ 1-84 are incorporated by reference.

86.  At all times, an attorney-client relationship existed between Plaintiff and Defendant as to the Property.

87.  As a result of the attorney client relationship, Defendant owed Plaintiff various duties including; (a) the duty of competence, requiring an attorney to have knowledge and skill necessary to confront the circumstances of each case;  (b) the duty of care, to act at all times to represent and handle Plaintiff's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity; (c) the duty of loyalty, including the obligation to fully and fairly disclose any actual or potential conflicts of interest; (d) and a duty of care to perform its obligations with due care and use reasonable care so as not to cause injury to their client, Plaintiff.

88.  Defendant's duties to Plaintiff extended to and encompassed RHG, of which Plaintiff always was the sole member.

89.  Defendant continually failed to exercise reasonable care, skill and diligence and breached its above duties to Plaintiff by representing the Association against RHG,

Plaintiff's subsidiary, in both quiet title cases, to invalidate the Mortgage as to the Property and representing the Association against RHG and Plaintiff in the mediation and otherwise as to the Property, constituting gross negligence and/or intentional misconduct.

90.   Defendant admitted its repeated breach of its duties by (a) dismissing RHG from the First Quiet Title Case just prior to the disqualification hearing and (b) substituting another firm into the Second Quiet Title Case, just prior to a second disqualification hearing.

91.   Defendant's continuous and ongoing breach of its above duties proximately and actually caused damages to Plaintiff.

92.   Plaintiff demands judgment against Defendant for compensatory, consequential, special and punitive damages under Fla. Stat. § 768.72 for its legal malpractice, intentional misconduct and/or gross negligence, for at least $75,000.00, exclusive of costs, plus interest and costs.

<u>COUNT II: BREACH OF FIDUCIARY DUTY</u>
<u>AND RELATED RELIEF</u>

93.   ¶ 1-84 are incorporated by reference.

94.   A confidential, fiduciary duty existed between Plaintiff and Defendant, in which Plaintiff reasonably reposed faith, trust and confidence, whose judgment and advice it relied

upon in resolving the title issues in the Sebastian foreclosure as to the Reflections Property

95.   Defendant voluntarily undertook the above trust and assumed the duty to advise, counsel and protect Plaintiff and its interests.

96.   As a result of this fiduciary relationship, Defendant owed Plaintiff various fiduciary duties including (a) the duty of care, to act at all times to represent and handle Plaintiff's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity; (b) the duty of loyalty, including the obligation to fully and fairly disclose any actual or potential conflicts of interest.

97.   Defendant's above duties to Plaintiff extended to and encompassed RHG, of which Plaintiff always was the sole member.

98.   Defendant continually failed to exercise reasonable care, skill and diligence and breached its above duties to Plaintiff by representing the Association against RHG, Plaintiff's subsidiary, in both quiet title cases, to invalidate the Mortgage as to the Property and representing the Association against RHG and Plaintiff in the mediation and otherwise as to the Property, constituting gross negligence and/or intentional misconduct.

99.   Defendant admitted its repeated breach of its duties by (a) dismissing RHG from the First Quiet Title Case just prior

to the disqualification hearing and (b) substituting another firm into the Second Quiet Title Case, just prior to a second disqualification hearing.

100. Defendant's continuous and ongoing breach of its above duties proximately and actually damaged Plaintiff.

101. Plaintiff demands judgment against Defendant for compensatory, consequential, special and punitive damages under Fla. Stat. § 768.72 for its breach of its fiduciary duty, intentional misconduct and/or gross negligence, for at least $75,000.00, exclusive of costs, plus interest and costs.

WHEREFORE, Plaintiff prays for the following relief:

a) Per Count I for judgment against Defendant for compensatory, consequential, special and punitive damages for its legal malpractice, intentional misconduct and/or gross negligence, for at least $75,000.00, exclusive of costs, plus interest and costs and other proper relief; and

b) Per Count II, judgment against Defendant for compensatory, consequential, special and punitive damages for its breach of fiduciary duty, intentional misconduct and/or gross negligence, for at least $75,000.00, exclusive of costs, plus interest and costs and other proper relief; and

c) Such other just and proper relief.

Respectfully submitted this 8th day of October, 2014.

By:  */s/Paul G. Wersant*  _____
     Paul G. Wersant
     Florida Bar No. 48815
     6340 Sugarloaf Parkway Suite 150
     Duluth, Georgia 30097
     Telephone: (770) 864-1403
     Facsimile: (770) 864-1503
     Email: pgwersant@sequoiafinanciasolutions.com
     Attorney for Plaintiff